## FISH and others *vs.* DAVIS.

It is not only the right, but the duty, of the court, to direct the verdict which the jury shall give, when the evidence in the case is so preponderating in favor of one of the parties that if a verdict should be found one way, the court would set it aside as against evidence. ·

The converse of the rule—to wit, that when the evidence is not so preponderating in favor of one of the parties as that the court would set aside a verdict found against the evidence, the case must go to the jury—is equally as well settled.

Facts which were held, in this case, to characterize a transaction between the parties, as the payment of a debt to the defendant, and not as a loan of money to him, by the plaintiffs.

Upon the question whether promissory notes, given by the plaintiffs to the defendant, were given in payment of a debt, as claimed by the defendant, or as a loan to the defendant, as claimed by the plaintiffs, the fact that the plaintiffs have made payments upon such notes, to the defendant as the *owner* and *holder*, upon demand of payment as a matter of right, is a circumstance of such force and significance that the jury should be allowed to say what weight it should have on the issue between the parties.

And there being evidence, and very strong evidence, that the notes, (together with some money,) were delivered as payment for property purchased by the plaintiffs of the defendant, and not by way of loan; it was further *held* that it was erroneous for the judge to direct a verdict for the plaintiffs, in an action brought to recover back the amount advanced, as being a loan.

Where a special agent is employed to accomplish a particular purpose, a party seeking to make the principal liable for the acts of the agent, must prove what the authority of the agent was; and the principal may disprove it, or show what it in fact was.

A principal is not estopped by the declarations of his agent as to his authority.

When it is sought to bind the principal by reason of his having ratified the acts of the agent, it is essential, to give effect to the ratification, that it should have been done with full knowledge of all the facts.

IN January, 1860, the plaintiffs commenced an action to recover from the defendant the sum of $2491.49, alleging that on or about January 1, 1857, they loaned to the defendant $1000 in money, and executed to him their three promissory notes, at one, two and three years, for the aggregate sum of $6500, on which they made payments to the amount of $1491.49. They alleged that the parties were members of a company for the sale and manufacture

of railroad chairs, to whose interests it was important that the defendant should devote his. attention, and that to enable him to do so, it was necessary he should obtain this loan. That the defendant promised to give such attention, and promised to pay the notes out of the profits to be received by him, or otherwise; and that the notes were given upon this promise and understanding. That the defendant did, for a time, give his attention, but afterwards refused to do so, unless the plaintiffs would wrongfully unite with him to the prejudice of one Bullard's interest in the company, which they refused to do. The defendant thereafter refused to perform any service for the corporation. The defendant, in his answer, claimed that the money and notes were given for the purchase of his interest in the foreign patent for railroad chairs referred to in the complaint, and in the agreement of July 28, 1856, and in lieu of the $15,000 interest held by him in the company organized under that agreement, that the same were valid obligatory notes, given for value received, (not as a loan,) and demanded a judgment for the balance remaining unpaid upon the notes.

The plaintiffs were the owners of a patent. on the same subject of elastic chairs, granted to Elnathan Smith, and by the agreement of July 28, 1856, it was provided that this patent and the defendant's patent should be thrown into a common interest; that the patents for the United States should offset each other, but for the defendant's foreign patents, the defendant should receive the sum of $15,000 from the first sales of the right to use and apply these patents. A controversy soon arose between the parties as to whether this $15,000 was to be paid from the net or the gross sales, and it continued unsettled till the giving of the notes; the defendant claiming the gross receipts, the plaintiffs consenting to pay only the net. The defendant repeatedly offered to sell to the plaintiffs his interest in the company, being one half, for one half

of that sum, ($15,000,) which would be equal to the receipt by him from the company, of the full sum. In November, 1856, the matters in controversy remaining in the same condition, Gilbert, one of the plaintiffs, and Wm. A. Bullard, went to the defendant's house in Dedham, Massachusetts. Gilbert was there with the approbation of Fish. The subject of the purchase of the defendant's interest was then under discussion, when Gilbert made an offer to purchase the defendant's interest in the patent for $7500. Not a word was said or an intimation made, at that time, in reference to a loan; a sale and purchase was the only subject of discussion. A few days afterwards Bullard came to Utica, and it was conceded on both sides, that the notes and money were delivered to him by the plaintiffs, in December, 1856, with a letter, to be delivered to the defendant. No receipt or memorandum showing that they were other than obligatory notes, as indicated upon their face, was asked for, or was given. At the time of delivering the notes to Bullard, the plaintiffs addressed to the defendant a letter of December 4, 1856, authorizing the delivery of the notes upon the execution of the assignment.

Within a few days' thereafter Bullard arrived at Dedham, delivered the notes and money to the defendant, received an assignment of the patent, forwarded the same to the plaintiffs, but made no statement or intimation to the defendant that the notes were a loan. Payments were made by the plaintiffs upon the notes at three different times during the year 1858, in the ordinary manner of making payments, and with no protest or claim of nonliability to pay. It was alleged by the defendant that the first knowledge he had that the transaction was claimed to be a loan, was in November, 1859.

The action was tried before Justice BACON and a jury, in February, 1861, when the jury found a verdict for the defendant, for over $7000, the balance remaining unpaid

Fish *v.* Davis.

upon the notes. A new trial was granted, and the action was tried, a second time, before a justice and a jury, in October,.1861.

At the close of the testimony, the counsel for the plaintiffs insisted-that the evidence established that the money and notes were applied for and obtained by Bullard, (who then represented himself to the plaintiffs to be, and acted as, the agent of the defendant, as a loan to the defendant, and that the plaintiffs advanced the money and delivered the notes as a loan to the defendant, confiding in the representations of Bullard, and believing that he was authorized to obtain the same as a loan; that upon this evidence, a verdict to the contrary would be against evidence; and, therefore, requested the court to direct a verdict in favor of the plaintiffs for the amount advanced to and received by the defend-' ant from the plaintiffs. The defendant's counsel objected, claiming that there was evidence in opposition to the plaintiffs' claim, and in support of the defendant's claim to go to the jury, and claimed the right to have the case submitted to the jury. The court overruled the defendant's objection, and ruled and decided. that the question was not whether in fact Bullard exceeded his authority from Davis, in arranging for and obtaining the money and notes as a loan and accommodation from the plaintiffs to the defendant, but what, in fact, was the arrangement made at Utica between Bullard and the plaintiffs, as to the money to be advanced, and the notes. That both Bullard and the plaintiffs testified that the plaintiffs agreed to and did advance the money, and delivered the notes as a loan to the defendant, and for his accommodation, and that they refused to do so upon any other terms, and that the evidence would not warrant a verdict to the contrary. He therefore directed the jury to render a verdict in favor of the plaintiffs, for the amount advanced by the plaintiffs to the defendant, with interest; to which ruling and decision the defendant's counsel excepted.

The jury, under the direction of the court, found a verdict for the plaintiffs, for $2751.42.

The court also directed that the case, with exceptions, be heard in the first instance at general term, and that the judgment in the meantime be suspended.

To set aside the verdict, and to correct the rulings of the court, and to obtain a new trial, a case and exceptions were made on behalf of the defendant.

*F. Kernan,* for the plaintiffs.

*Hunt & Waterman,* for the defendant.

*By the Court,* MULLIN, J.   It is not only the right, but the duty, of the court, to direct the verdict which the jury shall give, when the evidence in the case is so preponderating in favor of one of the parties as that if a verdict should be found one way, the court would set it aside as against evidence.   This is perhaps as precise as the rule can be laid down; and it is not difficult of application. The converse of the rule—to wit, that when the evidence is not so preponderating in favor of one of the parties as that the court would set aside a verdict found against the evidence, the case must go to the jury—is as well settled as the other.

The only question which I propose to examine, in this case, is whether the court was justified, under the foregoing rules, in directing a verdict.

The prominent facts on which the plaintiffs relied for a recovery were, that a misunderstanding had arisen between the parties, as to the meaning of the clause of the contract of the 28th of July, 1856, in which it was provided that the said defendant should receive $15,000 from the first sales of the right to use the two American patents mentioned and described in said contract.   This sum, when received, was to be in full payment for one half of

certain European patents owned by the defendant, and which he was to assign to the plaintiffs. The misunderstanding between the parties was as to whether the $15,000 should be taken from the gross, or the net receipts of sales; the plaintiffs insisting on the latter construction, and the defendant on the former. The defendant sent one Bullard to Utica, as his agent, to procure from the plaintiffs $7500, as he wanted that sum sooner than it could be realized from the sales, and he effected this object, and procured from them money and notes to the amount of $7500, as it is claimed by the plaintiffs, as a loan, and the money and notes were to be delivered to the defendant on his assigning the one half of the European patents. The paper and money were paid over to the defendant, and an agreement to assign executed and delivered, which seems to have been satisfactory to Bullard. That the transaction was a loan to the defendant, and not the payment of a debt, is testified to by Bullard, the agent, and by Fish, Gilbert and Ballou, three of the plaintiffs.

On the part of the defense, the defendant himself was called, and testified to sending Bullard to Utica, the receipt of the money and notes, and the assignment of the patent. It further appeared that in November, 1856, and after the misunderstanding above mentioned arose, Gilbert, one of the plaintiffs, was at the defendant's house, and made the proposition to the defendant, subject to the approval of Fish and Ballou, to give the defendant $7500 in cash and notes on time, to be in full of his interest in the European patents. This proposition was not assented to by Fish and Ballou, and early in December Bullard went to Utica, as above stated. On his return he brought a letter from Fish, Gilbert and Ballou, addressed to the defendant, in which he was informed that as soon as he executed such assignments as were satisfactory to Bullard, he might sign the drafts for the $1000 to be paid in cash, and they would honor them. The defendant says that

the first time he ever heard that the notes and money had been loaned to him was when he came to Utica, and the notes were obtained from him in the manner disclosed by him.

On the 28th of January, 1858, $900 was paid by the plaintiffs on their notes to the defendant; on the 9th of August, 1858, $100; on the 16th of December, 1858, $131.70. The notes were given in exact conformity to the proposition of Gilbert. On the 25th of July, 1859, the defendant, in his letter of that date, to Fish, complains of the delay of the plaintiffs in making payments on the notes then due, and desires to know whether they would let him have part, or the whole amount then due him, or give new notes on short time. In the reply of Fish to the letter, under date of July 28, 1859, after apologizing for not having written before, by reason of the delay of Hamilton in not returning from Europe, says: "From some expressions in your letter, I infer your views of our relations and responsibilities differ somewhat from my own; but I will not discuss that now, as I hope, on the return of Hamilton, we can meet and dispose of the matter referred to," &c. This seems to have been the first intimation the defendant had that there was any misunderstanding as to the paper, and this suggestion is put forth in a way to prevent, rather than to invite, inquiry. In letters from the plaintiffs to the defendant, of the dates of March 9, 1859, April 15 and 26, September 18, 1859, and August 6, 1858, the plaintiffs, replying to calls on them for money, by the defendant, beg for time on account of want of means in their own affairs, and the small receipts from sales of the rights under the patents. The defendant had personal interviews with one or more of the plaintiffs at the time one or two of the payments were made, and no intimation was given that the notes were deemed or considered a loan.

Without alluding to any other of the numerous facts

Fish *v.* Davis.

bearing on the question of loan or no loan, which was the only issue in the case, it is quite obvious that there was evidence, and very strong evidence, that the money and notes were delivered as payment for the one half of the European patents, and not by way of loan. The payments made on these notes to the defendant personally as the *holder and owner of the notes,* upon demand of payment as a matter of right, is a circumstance of such force and significance that the jury should have been allowed to say what weight it should have on the issue between the parties. On this position alone, it seems to me the judgment must be set aside, and a new trial had; costs to abide the event.

I am unable to conceive how the lenders of notes to another, for that other's accommodation, should, on demand by him holding the notes, pay from time to time considerable sums of money on them and yet insist that the fact of payment was not any evidence to show that the notes were held by the holder as his property, and not by way of loan.

There is one other question upon which it is perhaps proper the court should express an opinion, and that is, whether the defendant may prove what authority he gave to Bullard, when he came to Utica as his agent, and obtained the notes.

Such evidence was offered on the trial, and rejected; and from the nature of the case it will arise on the next trial of this action, and it may prevent delay and expense if we now dispose of that question.

This action is to recover the money paid to the defendant on the three drafts for the $1000, and the money paid on the notes. The drafts and notes are evidence that the money was due to, and not from, the defendant. The plaintiffs, to recover, must establish the fact of the loan; and that loan being negotiated, if at all, through an agent, it must appear that the agent had authority to act for, and

Fish *v*. Davis.

to bind the principal. Bullard was called, and swore that he was authorized to make the loan, and the defendant offered himself to show what his authority actually was. Is not such evidence admissible ? Is the principal estopped by the declaration of the agent as to his authority ? I know no such principle. Bullard was a special agent to accomplish a particular purpose ; what his authority was, the plaintiffs must prove ; and if they must prove it, the defendant may disprove it, or show what it in fact was.

If it is sought to bind the principal by reason of his having ratified the acts of the agent, it was essential, to give effect to the ratification, that it was done with full knowledge of all the facts. No such thing was proved. On the contrary, the principal was left to believe that the notes were delivered as payment for his half of the European patents, and not by way of loan. I am therefore of the opinion that, on this ground, a new trial should be ordered. But I prefer to put the reversal of the judgment on the other ground, as that is the important point in the case, and the one on which it must finally be decided.

ALLEN and BACON, JJ., concurred.

MORGAN, J., gave no opinion.

Judgment reversed.

[ONEIDA GENERAL TERM, January 7, 1862. *Allan, Morgan, Mullin* and *Bacon*, Justices.]